28 F.3d 1214
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James August PALLADINO, Defendant-Appellant.
 No. 92-4360.
 United States Court of Appeals, Sixth Circuit.
 July 13, 1994.
 
 1
 Before: JONES and NORRIS, Circuit Judges; and CLELAND, District Judge.*
 
 
 2
 CLELAND, District Judge.
 
 
 3
 The government appeals the district court's grant of defendant's motion to suppress based upon its findings at a Franks hearing. We remand the case merely to allow the District Court to clarify which portions of the affidavit it found to be false and whether any remainder of the affidavit would support a finding of probable cause.
 
 I. Background
 
 4
 On February 7, 1991, a search warrant was executed at the home of James Palladino on Shepherd Road in Macedonia, Ohio. The search was to be for firearms and related documents and resulted in the seizure of sixty-three firearms. A grand jury indicted Palladino for being a convicted felon in possession of firearms in violation of 18 U.S.C. Secs. 922(g)(1) and 924(a)(2).
 
 
 5
 The warrant had been sought by Special Agent Wells of the Bureau of Alcohol, Tobacco & Firearms ("ATF"). Wells submitted his affidavit to a U.S. Magistrate Judge on the day previous to the search, and the warrant issued. On April 10, 1992, the defendant filed a motion to suppress the evidence seized pursuant to the warrant and requested a Franks[1] hearing, alleging that material information was omitted from the warrant (Defendant-Appellee Brief, p. 2). In the trial court's judgment, Defendant made a sufficient "substantial preliminary showing that the specified portions of the affiant's averments are deliberately or recklessly false and ... [that] a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side" to obtain a Franks hearing. United States v. Campbell, 878 F.2d 170, 171 (6th Cir.1989).
 
 
 6
 At a Franks hearing, if "the allegation of perjury or reckless disregard is established by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded." Franks v. Delaware, 438 U.S. 154, 156, 57 L.Ed.2d 667, 672 (1978).
 
 
 7
 A hearing was held in this matter on August 6 and 7, 1992, and the court granted defendant's motion to suppress based upon its findings at the evidentiary hearing; the government appeals that decision.
 
 
 8
 Two issues are presented on appeal: (1) whether the district court properly applied Franks to the facts of this case, and (2) the appropriate standard of review upon a district court's determinations following a Franks analysis.
 
 
 9
 We note that the district court carefully drafted an extensive set of findings, but we conclude that it remains difficult to determine with certainty whether a crucial portion of the affidavit was regarded by the district court as "false." Correspondingly, it is not possible to determine whether the court's findings were made pursuant to the mandates of Franks. Thus, we REMAND the case for further findings.[2]
 
 II. Standard of Review
 
 10
 Appellant frames the standard of review issue this way: "whether there was probable cause for the search of defendant's residence," and suggests that review should be de novo (Brief, p. 10). Appellee contends that review should be for clear error (Brief, p. 16). However, neither party recognizes that the determination of probable cause can occur at two different stages of inquiry.[3] This Court believes that different standards should be applied to review of "non-Franks " probable cause determinations versus "post-Franks " probable cause determinations.
 
 
 11
 Where a search warrant is challenged at a motion to suppress which is not a Franks hearing, but rather one based upon a challenge to the sufficiency of the facts laid out in support of probable cause, the requirements are clearly articulated in Illinois v. Gates, 462 U.S. 213, 236, 76 L.Ed.2d 527, 547, 103 S.Ct. 2317 (1983). The "standard for review of an issuing magistrate's probable-cause determination has been that so long as the magistrate had a 'substantial basis for ... conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." Id. "Furthermore, an issuing magistrate's probable cause determination 'should be paid great deference by the reviewing courts.' " United States v. Pelham, 801 F.2d 875, 877 (6th Cir.1986). On appeal of such a decision, since this Court employs the same standard as did the district court in reviewing the magistrate's decision, this Court's review is de novo on the district court [ See, Hansard v. Barrett, 980 F.2d 1059, 1061 (6th Cir.1992) ] in determining whether the magistrate had a substantial basis for finding probable cause. Gates, 462 U.S. at 236.
 
 
 12
 Where defendant makes a sufficient showing to obtain a Franks hearing,[4] and is able to show by a preponderance of evidence at the hearing that the affiant lied or acted in reckless disregard of the truth[5] with respect to certain portions of the affidavit, the trial judge is expected to excise those portions and proceed to determine whether the balance of the affidavit is sufficient to support a determination of probable cause. In this setting, an appellate review of the trial court's determination of probable cause--or the lack of it--need not be granted the deference a reviewing trial court would give to a warrant-issuing magistrate; we believe, rather, that this determination should be reviewed de novo.
 
 
 13
 The policy rationale for deference to the magistrate's determination of probable cause is to encourage police officials to submit investigations to the independence of judicial process, and to secure warrants before conducting searches. Gates, 462 U.S. at 236-237. While the factual determinations made by a trial judge at an evidentiary hearing are entitled to deference,[6] there appears no logical rationale for the probable-cause determination species of deference in circumstances where an affidavit has been judicially examined in a Franks hearing and reorganized after a determination that it contained material falsities or omissions. The decision made following that process is a legal one: is the standard of probable cause met within the facts remaining in the affidavit or is it not? Absent justifiable deference, the Court generally reviews legal questions under the de novo standard of review. United States v. Leake, 998 F.2d 1359, 1362 (6th Cir.1993). Therefore, the appropriate standard to review a judge's post-Franks determination of whether the remaining portions of an affidavit support probable cause is de novo.
 
 
 14
 If it is determined that probable cause cannot be supported by the non-excised portions of the affidavit, the evidence seized must be suppressed. Franks, 438 U.S. at 156. As the district judge in the instant case noted, the good faith exception to the warrant requirement does not apply in this Circuit where a knowing or reckless falsity was made in an affidavit. U.S. v. Baxter, 889 F.2d 731 (6th Cir.1989), citing United States v. Leon, 468 U.S. 897, 922, n. 24, 104 S.Ct. 3405, 82 L.Ed.2d 677, 698, n. 24 (1984). This is so even where an innocent officer executes a warrant based on another officer's knowing or reckless falsity.[7]
 
 III. Application of the Standard
 
 15
 It was acknowledged by both parties at oral argument that the survival of paragraph five of the affidavit is required in order for the warrant to be supported by probable cause. Paragraph five appears to stem from a conversation Wells had with the defendant's son, August Palladino. As noted above, following the two days of hearing, the district court rendered a detailed analysis of the affidavit, paragraph-by-paragraph. The court in addition described what the court believed to be four different versions of the circumstances of the August Palladino interview, all versions coming from testimony given by Wells. The last two paragraphs of the final section in the court's analysis of paragraph five, entitled "Conclusion," said:
 
 
 16
 The court is constrained to know which of the four versions to accept. It is extremely difficult to attach meaning and reliability to the interview of August Palladino which was not reduced to writing until the date of the affidavit.
 
 
 17
 That Agent Wells testified he reviewed his notes to prepare the affidavit, perhaps again prior to appearing before the Grand Jury, and certainly again before his testimony at the hearing, and then testified that he had no notes to review, signifies confusion and gives rise to the conclusion that what appears reliable is, in fact, highly unreliable and defies credulity.
 
 
 18
 Opinion, p. 30.
 
 
 19
 Near the end of the opinion, in the "Summary" section, the court correctly recites the Franks standard, and then goes on to state the holding:
 
 
 20
 "If a magistrate or judge in issuing a warrant was mislead by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," Franks at 156, suppression is appropriate. Pursuant to Franks, this court holds that the defendant has established reckless disregard for the truth by a preponderance of the evidence and therefore suppression is the appropriate remedy." Opinion, p. 34. (emphasis supplied)
 
 
 21
 Even though it may seem probable from all this that the district judge intended to find what a Franks inquiry is designed to detect (intentional or reckless falsity), the court's Order simply does not so hold.[8] "Reckless disregard for the truth" is not in itself equivalent to "falsity," but is a substitute for proof of culpable intentionality--i.e., lies--when falsity has been found to exist. "It would be an unthinkable imposition upon [the magistrate's] authority [for] a warrant affidavit to contain a deliberately or recklessly false statement...." Franks, 438 U.S. at 165 (emphasis supplied). United States v. Colkley, 899 F.2d 297, 303 (4th Cir.1990) (noting that a Franks violation requires a "demonstration of moral culpability" that can be shown where falsehood is "deliberate" or made with "reckless disregard for the truth"); United States v. Cook, 586 F.2d 572, 580 (5th Cir.1978) (en banc) (equating reckless disregard for the truth with knowledge). Although certainly not to be desired or encouraged, some lack of care on the part of an affiant approximating "recklessness" might coexist with an affidavit that is in fact true. Calisto, 838 F.2d at 716; United States v. Mittelman, 999 F.2d 440, 444 (9th Cir.1993) (holding that false statements regarding how the search was conducted as opposed to whether the warrant should issue were not material and thus, did not invoke Franks application). The Franks Court itself recognized that affiants approach magistrates with information "that sometimes must be garnered hastily." Franks, 438 U.S. at 164. Thus we remain uncertain whether the court's earlier statement, at the end of the paragraph five analysis, refers to all of paragraph five itself or simply to the salient--and apparently questionable--portions of the testimony of Agent Wells. While remand is required, we are mindful of the possibility of needless expenditures of judicial resources. In this regard, we believe that the issue to be addressed is quite narrow.
 
 
 22
 In finding that "what appears reliable ... is, in fact, highly unreliable," the district court may have been signaling a rejection of paragraph five altogether, but it also seems possible to us that this reference was more limited, and concerned Wells's testimony about the interview including whether notes were made.[9] Even if there were no doubt that the whole of paragraph five was the intended subject of the judge's pronouncement of "unreliable," it would be inappropriate to interpret such a finding as equaling the falsity required under Franks. In fact, at oral argument the government strenuously argued that the district court did not intend to say that paragraph five was utterly false, while the defense argued that the court intended to say that the whole affidavit was false based upon Agent Wells's lack of credibility. There is little doubt about the judge's displeasure with Wells, but after careful review of the affidavit and the judge's paragraph-by-paragraph analysis and findings, we conclude that there is room for interpretation on either side of the paragraph five dispute, and it is this that we ask the district court to clarify.
 
 
 23
 If, on remand, the district court finds that paragraph five is false in its entirety, then nothing would remain to which the court could apply the Franks test and which could support a finding of probable cause. Suppression of the evidence would appear inevitable. If, on the other hand, even though the testimony of Agent Wells displayed a "reckless disregard for the truth," the court did not find the contents of paragraph five entirely false, then it would not be excised from the affidavit, at least not entirely.[10] The district court would in this event make a further determination as to whether any non-excised remainder of the affidavit--chiefly paragraph five--supported probable cause. Franks, 438 U.S. at 156. All this is properly placed in the experienced and able hands of the trial court.
 
 
 24
 The case is REMANDED for proceedings consistent with this opinion.
 
 
 25
 NATHANIEL R. JONES, Circuit Judge, dissenting.
 
 
 26
 The majority today remands this case for an explanation of whether paragraph five of the affidavit is unreliable. Because I believe that the lower court has already satisfied this obligation, and because such a remand is an unwarranted expenditure of judicial resources, I respectfully dissent.
 
 
 27
 Under Franks v. Delaware, 438 U.S. 154, 171 (1978), a trial court is required to review "allegations of deliberate falsehood or of reckless disregard for the truth, [which are] accompanied by an offer of proof," when reviewing challenges to affidavits used to provide probable cause for search warrants. In United States v. Campbell, 878 F.2d 170, 173 (6th Cir.), cert. denied, 493 U.S. 894 (1989), we added that the trial court should analyze each portion of the affidavit separately to allow a reviewing court to determine "whether the untainted portion of the affidavit ... sufficiently supported a finding of probable cause."
 
 
 28
 The lower court in the instant case adhered to our judgment in Campbell and engaged in a paragraph by paragraph review. With regard to paragraph five, the only portion of the affidavit that the majority has remanded for a lack of clarity, the district court stated, "[t]here is nothing in this paragraph that ties firearms to the Shepard Road address." J.A. at 42. The court went on to find that "what appears reliable is, in fact, unreliable and defies credulity." J.A. at 43. However, despite this explicit renunciation, the majority declines to conclude that the lower court's statements were an outright rejection of paragraph five. I cannot agree.
 
 
 29
 I read the district court's language as nothing other than what it is--a clear denunciation of paragraph five of the affidavit. While the district court certainly could have said, "what appears reliable in paragraph five is in fact unreliable," the addition of this language was not required to clearly convey their message; both the format and the plain language used indicate the district court's rejection of the paragraph.
 
 
 30
 The fourth section of the lower court's opinion contained its discussion of the affidavit. This section, entitled "Analysis of the Affidavit," was divided into eight separate subsections. The title of each of these subsections corresponds to the paragraph of the affidavit that is discussed therein. The title of subsection E of this fourth section was "Paragraph Five and August Palladino." Thus, as per the format used by the lower court, the discussion that followed this subheading should be read to address only paragraph five, unless otherwise indicated. I find the majority's determination that some of the language used in this subsection may have been intended as commentary on the entire affidavit to be contradicted by this simple logic.
 
 
 31
 Moreover, had the lower court's language regarding unreliability been intended merely as a commentary on the affidavit as a whole, it would most logically have been placed in the final section of the opinion, entitled "Summary." In light of this option, I find that the placement of the statement was not accidental or ambiguous, but was instead a deliberate choice by the trial court based upon its finding that paragraph five was not credible. It was not that the district court had nowhere else to place comments regarding the affidavit as a whole, but rather that the comments it included at the end of subsection E were not intended to address the entire affidavit. Had there not been a "Summary" section, I might agree with the majority that general comments regarding the entire affidavit might be found elsewhere in the opinion. However, even the absence of the "Summary" section would not warrant the majority's conclusion, for the next most logical place for a statement addressing the entire affidavit would be in the final subsection of section four. Subsection E was not the final subsection of section four, it was followed by three sections that each addressed additional paragraphs in the affidavit. Accordingly, I cannot agree with the majority's conclusion that the comments included in subsection E were intended to address any paragraph other than the one referenced in the title of that subsection.
 
 
 32
 Not just the placement of the statement, but the language of the court as well, renders the trial court's rejection of paragraph five unambiguous. Subsection E began by stating:
 
 
 33
 This paragraph, regarding the interview with August Palladino, caused considerable concern. For this reason, and because the government's briefs purport this to be the single most important paragraph in the affidavit, containing recent information about James Palladino's alleged possession of firearms at Shepard Road, the court will review the testimony as to this interview in some detail.
 
 
 34
 J.A. at 34-35 (emphasis added). I cannot agree with the majority that the discourse which then followed was not specifically addressed to the court's reflection regarding the fifth paragraph of the affidavit. I cannot agree that it "remain[s] uncertain whether the court's earlier statement, at the end of the paragraph five analysis, refers to all of paragraph five itself or simply to the salient--and apparently questionable--portions of the testimony of Agent Wells." Majority Opinion at 10.
 
 
 35
 The majority's strained analysis of Section E is equally incongruous with the affidavit as a whole. The district court recognized that "Paragraph five is the core of the affidavit and all other information revolves around it." J.A. at 42. The court ultimately ruled that the affidavit was unreliable and suppressed the evidence. It makes little sense to conclude that there was ambiguity regarding the lower court's rejection of paragraph five when it proceeded to act as it did.
 
 
 36
 While district courts should be strongly encouraged to clearly set out their conclusions regarding the grant or denial of a motion to suppress, in the interests of judicial economy, we should not require a remand when we can clearly discern what the court intended to say. Where, as here, the lower court has made its conclusions clear, we as an appellate court ill serve the interests of justice by requiring the district court to restate what it has already made plain. In the face of this clarity, the majority directs a remand in order for the distinguished and experienced district judge to state, in effect, not only that it rained, but that "the water is wet." Overworked federal district courts should not be required to reaffirm answers that they have already clearly given. For as Justice Byron White noted several years ago, "litigation consumes vast quantities of social resources to produce little of tangible value but much discord and unpleasantness." Zauderer v. Office of Disciplinary Counsel, 471 U.S. 626, 642 (1985). I cannot find that the federal appellate courts serve any legitimate function by needlessly encouraging a further drain on these resources. I dissent.
 
 
 
 *
 Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Franks v. Delaware, 438 U.S. 154, 57 L.Ed.2d 667 (1978)
 
 
 [2]
 Remand for clarification is appropriate where the reviewing court cannot determine what information the trial court relied upon. See, United States v. Cifuentes, 863 F.2d 1149, 1156 (3rd Cir.1988) (disputed information related to sentencing); United States v. Colletti, 984 F.2d 1339, 1348 (3rd Cir.1992) (findings in support of enhancement of sentence were not given)
 
 
 [3]
 The Court notes that in its reply brief, the government cites a case which distinguishes between the determination of falsity and the legal question of whether the remainder supports probable cause in arguing for de novo review (Reply Br, p.p 1-2). However, the government does not continue to distinguish between non-Franks and post-Franks review of the probable cause determination
 
 
 [4]
 The Circuits are split as to the proper standard of review for a denial of a Franks hearing. United States v. Dale, 991 F.2d 819, 843, n. 44 (D.C.Cir.1993). The Court in Dale noted that four circuits employ clear error review [ United States v. Buchanan, 985 F.2d 1372, 1378 (8th Cir.1993); United States v. Skinner, 972 F.2d 171, 177 (7th Cir.1992); United States v. Hadfield, 918 F.2d 987, 992 (1st Cir.1990); United States v. One Parcel of Property, 897 F.2d 97, 100 (2nd Cir.1990) ] and two review de novo [ United States v. Homick, 964 F.2d 899, 904 (9th Cir.1992); United States v. Mueller, 902 F.2d 336, 341 (5th Cir.1990) ]. Dale, 991 F.2d at 843, n. 44
 
 
 [5]
 At the Franks hearing, the district court's determination of whether statements in an affidavit are false, and if false, whether the statements were made either knowingly or with reckless disregard for the truth, are reviewed for clear error. U.S. v. Sitton, 968 F.2d 947, 955 (9th Cir.1992). This is consistent with the general proposition that findings of fact are to be reviewed for clear error. U.S. v. Ogbuh, 982 F.2d 1000, 1003 (6th Cir.1993)
 
 
 [6]
 United States v. Dempsey, 733 F.2d 392, 396 (6th Cir.1984), and note 5, supra
 
 
 [7]
 The Leon court clearly noted that "[r]eferences to 'officer' throughout this opinion should not be read too narrowly. It is necessary to consider the objective reasonableness, not only of the officers who eventually executed a warrant but also of the officers who originally obtained it or who provided information material to the probable-cause determination. Nothing in our opinion suggests, for example, that an officer could obtain a warrant on the basis of a 'bare bones' affidavit and then rely on colleagues who are ignorant of the circumstances under which the warrant was obtained to conduct the search." Leon, 468 U.S. at 922, n. 24
 The Second Circuit, however, has affirmed a district court determination that, although a warrant "violated the Fourth Amendment because its contents were not supported by oath or affirmation," the good faith exception applied and justified denial of defendant's motion to suppress. United States v. Moore, 968 F.2d 216, 221 (2nd Cir.1992). The Ninth Circuit has distinguished between affidavits that incorrectly identify the source of information and those that omit any reference to the source. The former require invalidation of the warrant [ United States v. Davis, 714 F.2d 896, 900 (9th Cir.1983) ] and the latter do not [Sitton, supra ].
 
 
 [8]
 Nor did the court find anything relative to "omission" which would affect the affidavit. The court determined that there were "serious omissions and misrepresentations," and that "[t]here is also serious question as to the reliability of Wells' testimony about key items of information in the affidavit." The court did not note any omissions which were so material that their addition would render the affidavit incapable of supporting probable cause, stating only that "it is possible that if the omissions were part of the affidavit and if the misrepresentations were corrected the 'totality of the circumstances' would be sufficiently different so that the Magistrate Judge would not have determined the existence of probable cause. Opinion, p. 33 (emphasis supplied). The inquiry relative to omissions is not whether the magistrate might have decided differently had the material been included (or the misrepresentations revealed), but is instead whether probable cause exists even after their addition (or revelation). Stewart v. Donges, 915 F.2d 572, 582 (10th Cir.1990) (noting that where omissions are alleged, the best approach under Franks is to " 'delete the false or misleading statements, and insert the omitted truths' ... Thus, not every omission of relevant information will be regarded as 'material.' The omitted information must be so probative as to negate probable cause."); United States v. Martin, 615 F.2d 318, 328 (5th Cir.1980) ("[The court is] required to determine whether, if the omitted material had been included in the affidavit, the affidavit would still establish probable cause ...")
 
 
 [9]
 The government pointed out in argument that all four of the versions of Wells' interview contained the same kernel: the defendant's possession and use of firearms. The differences appear mainly in supplementary details including the timing of the interview and the existence or absence of contemporaneous notes. We leave to the trial court the determination of what effect, if any, these differences may have upon findings of the existence of falsity in the affidavit, or concerning the existence or absence of probable cause
 
 
 [10]
 Because paragraphs vary in length, complexity and detail, there may be room for finding that only portions of some paragraphs are required to be deleted. See, U.S. v. Crenshaw, 817 F.Supp. 755, 760 (E.D.Wis.1993); U.S. v. Callaghan, 445 F.Supp. 1296, 1302 (D.N.J.1978)